UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADUSH NICHOLAS MUCAJ, A-095-903-971 | No. 1:26-cv-02467-TLN-DMC-HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN, GOLDEN STATE ANNEX, et. al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding with appointed counsel, filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. See ECF No. 11. Respondents filed an answer, ECF No. 14, Petitioner filed a reply, ECF No. 16.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## I. BACKGROUND

In his amended petition,[1] Petitioner contends that Petitioner is a citizen of Albania "subject to a final order of removal issued approximately in 2005 to Albania." ECF No. 11, pg. 2. According to Petitioner, he "was released from immigration custody under an order of supervision," until he was re-detained without "notice of the reasons for his re-detention or a meaningful opportunity to respond, as required by governing regulations." Id. Petitioner asserts that his "detention is governed by 8 U.S.C. § 1231" but such detention is limited by Zadvydas v. Davis, 533 U.S. 678 (2001), and "if there is no significant likelihood of removal in the reasonably foreseeable future, continued detention is not authorized." Id. at 3. Petitioner contends that in order to revoke supervised release for noncitizens who fall under § 1231, the government is required to comply with 8 C.F.R. §§ 241.4, 241.13. Id. at 3-4. Petitioner argues that his re-detention did not comply with those regulations and therefore violates his statutory and due process rights and his prolonged detention violates the Supreme Court holding in Zadvydas.

Respondents contend that Petitioner "is lawfully detained," because he "was validly arrested on an [sic] warrant of removal/deportation," and there is a significant likelihood of Petitioner's removal in the reasonable foreseeable future because Albania issued a travel document for Petitioner. ECF No. 14, pgs. 2-4. Respondents assert that Petitioner was detained by immigration authorities on November 15, 2025, following a conviction for aggravated assault. See id. at 2. Respondents argue Petitioner's detention does not violate Zadvydas because there is a travel document for Petitioner, valid through October 1, 2026, and the Petitioner should be denied. See id. at 2-4.

In reply, Petitioner asserted that "Respondents have failed to meet their burden under Zadvydas, failed to comply with governing regulations, and failed to justify Petitioner's continued detention." ECF No. 16, pg. 5. Following Petitioner filing a reply, Respondents

---

[1] In the amended petition, Petitioner names the following as Respondents: Warden of Golden State Annex, the Secretary of the Department of Homeland Security, the Director of ICE, and other officials responsible for Petitioner's detention." ECF No. 11, pg. 2. The docket only names "Warden, Golden State Annex Detention Facility" as the sole Respondent and the undersigned will accordingly direct the Clerk of the Court to update the docket to reflect these additional Respondents.

requested judicial notice of the travel document for petitioner, issued April 1, 2026, valid until October 1, 2026, explaining that Albania uses month-day-year format for dates. See ECF Nos. 17 and 19.

## II. DISCUSSION

As a preliminary matter, the undersigned finds that the government has a travel document for Petitioner which is valid through October 1, 2026. Though initially the document appeared to be valid only through January 10, 2026, ECF No. 12, Respondents filed an unredacted version to demonstrate that Albania uses month-day-year format for dates, ECF No. 19, which showed Petitioner's birthday listed in month-day-year format. Based on this updated information, the undersigned finds Petitioner's travel document is valid through October 1, 2026.

Based on this travel document, the undersigned finds Petitioner's claim that his detention violates Zadvydas to be without merit and will therefore recommend denying the petition as to this claim. However, the undersigned finds there is no evidence that Petitioner was afforded the process prescribed in 8 C.F.R. § 241.13(i) when his conditional release was revoked and will therefore recommend granting the petition as to this claim.

### A.    Likelihood of Removal

When the Government wants to remove a noncitizen,[2] the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a).  After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days . . . ." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as relevant here, on the "date the order of removal becomes administratively final." Id. § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the removal period. § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE "may" continue to detain the noncitizen after the removal period if he falls into certain categories, including that he entered "the United States without being admitted or paroled," or arrived "in the

---

[2] The court prefers the term "noncitizen" to "alien." Because the regulatory language at issue frequently uses the term "alien," the court will use the terms interchangeably in this order.

United States at any time or place other than as designated by the Attorney General." §§ 1231(a)(6), 1182(a)(6)(A)(i). Although there is no explicit statutory limit to the period for which a noncitizen may be detained following the removal period, in Zadvydas the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

> Id. at 701.

Here, Respondents filed an Albanian travel document issued for Petitioner on April 1, 2026, valid through October 1,2026. See ECF No. 19. Though Petitioner initially established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the undersigned finds that Respondents provided sufficient evidence to rebut Petitioner's showing. The undersigned will therefore recommend that Petitioner's Zadvydas claim be denied.

### B.    **Revocation of Release**

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," the noncitizen must be released. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6).

/ / /

The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes revocation of a noncitizen's release for violating conditions of release or purposes of removal, specifically:

> (1) **Violation of conditions of release**.  Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
> (2) **Revocation for removal**.  The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

8 C.F.R. § 241.13(i),

§ 241.13(i) additionally outlines the revocation procedure, which requires: "(1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a "prompt" opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official." Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030590, at *2 (C.D. Cal. Sept. 12, 2025) (citing § 241.13(i)(3); § 241.4(l)(2)).

"It is well-established that government agencies are required to follow their own regulations." Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010)). In light of this, district courts have found it is appropriate to order the release of immigration detainees when it is determined that ICE violated their own policies when effectuating the detention of a noncitizen. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided"); Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017)(ordering petitioner's release because "the record does not show" that ICE followed the

requirements to revoke release as set forth in § 241.4); <u>Ceesay v. Kurzdorfer</u>, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) (finding petitioner's due process rights were violated when ICE failed to comply with § 241.4 when revoking petitioner's release due to violations of the conditions of release); <u>Saeid Baniasadi v. Fereti Semaia</u>, No. EDCV 26-01275-MWF(DSR), 2026 WL 851358 (C.D. Cal. Mar. 25, 2026)(ordering a petitioner's release upon finding petitioner is likely to succeed on his claim that the revocation of his release was not in accordance with § 241.4).

Here, Respondents contend that Petitioner was detained "on a warrant of removal/deportation" on November 15, 2025. ECF No. 14, pg. 2 (citing ECF No. 14-1). The cited Record of Deportable/Inadmissible Alien explains the "BASIS FOR ICE CHARGES," citing the fact that Petitioner is not claiming "USC or LPR" and Petitioner "is an alien present in the United States without being admitted or paroled . . ." ECF No. 14-1, pg. 2. The record does not show Petitioner was provided notification of the basis for revoking his release or an opportunity for Petitioner to present evidence and explain why revocation is not warranted. Thus, the undersigned finds that Respondents failed to comply with the requirements of § 241.13(i) when revoking Petitioner's conditional release. Even if Petitioner's assault conviction provided a valid reason to revoke Petitioner's release pursuant to § 241.13(i)(1), or if the government thought Petitioner's there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future, Respondents were required to adhere to the process § 241.13(i)(3) and they did not here. Indeed, Respondents never explain why Petitioner's release was revoked. Further, Petitioner was detained November 15, 2025, and his travel document was issued January 10, 2026, and therefore, it appears unlikely that there is a significant likelihood that Petitioner may be removed when he was detained November 15, 2025.

When the government seeks to revoke the release of a noncitizen subject to § 1231 for removal, but fails to provide the process prescribed in  8 C.F.R. § 241.13(i)(3), this Court has granted petitions, or afforded injunctive relief, ordering the immediate release of the noncitizen. See <u>Hoac v. Becerra</u>, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771 (E.D. Cal. July 16, 2025); <u>Vuong v. Becerra</u>, 1:25-cv-01847-DC-CSK, 2025 WL 3707172 (E.D. Cal. Dec. 22, 2025).
/ / /

6

Accordingly, the undersigned will recommend the amended petition, ECF No. 11, be granted as to Petitioner's claim his detention violated 8 C.F.R. § 241.13, Petitioner be immediately released, and Respondents be enjoined and restrained from re-arresting or re-detaining Petitioner absent compliance with 8 C.F.R. § 241.13(i).

### III. CONCLUSION

Based on the foregoing, the undersigned orders and recommends:

1.   The Clerk of the Court is directed to update the docket to reflect the Respondents named in the amended petition: "Warden of Golden State Annex, the Secretary of the Department of Homeland Security, the Director of ICE, and other officials responsible for Petitioner's detention." ECF No. 11, pg. 2.

2.   It is RECOMMENDED that the amended petition for writ of habeas corpus, ECF No. 11, be GRANTED IN PART;

3.   Specifically, it is RECOMMENDED that the petition for writ of habeas corpus, ECF No. 1, be GRANTED as to Petitioner's claim his detention violated 8 C.F.R. § 241.13 and DENIED as to Petitioner's claims that his continued detention violates due process and is unlawfully prolonged under Zadvydas;

4.   It is RECOMMENDED that Respondents be ORDERED to immediately release Petitioner, ADUSH NICHOLAS MUCAJ, A-095-903-971, on the same conditions as his prior release with all Petitioner's documents and possessions;

5.   It is RECOMMENDED that Respondents be ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i);

/ / /

/ / /

/ / /

/ / /

6.      It is RECOMMENDED that Respondents be ORDERED to file a notice of compliance within three (3) days of the District Judge's order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 15, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

8