UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADUSH NICHOLAS MUCAJ, A-095-903-971 | No.  1:26-cv-02467-TLN-DMC-HC |
| Petitioner, | |
| v. | ORDER |
| | And |
| WARDEN, GOLDEN STATE ANNEX, et. al., | AMENDED FINDINGS AND RECOMMENDATIONS |
| Respondents. | |

Petitioner, an immigration detainee proceeding with appointed counsel, filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. See ECF No. 11. Respondents filed an answer, ECF No. 14, Petitioner filed a reply, ECF No. 16.

On June 15, 2026, the undersigned issued findings and recommendations recommending the petition for writ of habeas corpus be granted. See ECF No. 21. Respondents filed timely objections, ECF No. 22, and Petitioner filed a response, ECF No. 23. In light of those objections, the undersigned will vacate the prior findings and recommendations and issue these amended findings and recommendations.

///

///

1

## I. BACKGROUND

In his amended petition, Petitioner contends that Petitioner is a citizen of Albania "subject to a final order of removal issued approximately in 2005 to Albania." ECF No. 11, pg. 2. According to Petitioner, he "was released from immigration custody under an order of supervision," until he was re-detained without "notice of the reasons for his re-detention or a meaningful opportunity to respond, as required by governing regulations." Id. Petitioner asserts that his "detention is governed by 8 U.S.C. § 1231" but such detention is limited by Zadvydas v. Davis, 533 U.S. 678 (2001), and "if there is no significant likelihood of removal in the reasonably foreseeable future, continued detention is not authorized." Id. at 3. Petitioner contends that in order to revoke supervised release for noncitizens who fall under § 1231, the government is required to comply with 8 C.F.R. §§ 241.4, 241.13. Id. at 3-4. Petitioner argues that his re-detention did not comply with those regulations and therefore violates his statutory and due process rights and his prolonged detention violates the Supreme Court holding in Zadvydas.

Respondents contend that Petitioner "is lawfully detained," because he "was validly arrested on an [sic] warrant of removal/deportation," and there is a significant likelihood of Petitioner's removal in the reasonable foreseeable future because Albania issued a travel document for Petitioner. ECF No. 14, pgs. 2-4. Respondents assert that Petitioner was detained by immigration authorities on November 15, 2025, following a conviction for aggravated assault. See id. at 2. Respondents argue Petitioner's detention does not violate Zadvydas because there is a travel document for Petitioner, valid through October 1, 2026, and the Petitioner should be denied. See id. at 2-4. Further, Respondents contend that "Petitioner incorrectly claims the he was previously release on an order of supervision from immigration detention. However, ICE-ERO has no record of Petitioner being detained previously let alone being placed on an order of removal." Id. at 4. Respondent argues that because Petitioner was not previously released, "the regulations for revocation of an order of supervision do not apply." ECF No. 22, pg. 2.

In reply, Petitioner asserted that "Respondents have failed to meet their burden under Zadvydas, failed to comply with governing regulations, and failed to justify Petitioner's continued detention." ECF No. 16, pg. 5. Following Petitioner filing a reply, Respondents

2

requested judicial notice of the travel document for petitioner, issued April 1, 2026, valid until October 1, 2026, explaining that Albania uses month-day-year format for dates. See ECF Nos. 17 and 19.

## II. DISCUSSION

As a preliminary matter, the undersigned finds that the government has a travel document for Petitioner which is valid through October 1, 2026. Though the document initially appeared to be valid only through January 10, 2026, ECF No. 12, Respondents filed an unredacted version to demonstrate that Albania uses month-day-year format for dates, ECF No. 19, which showed Petitioner's birthday listed in month-day-year format. Based on this updated information, the undersigned finds Petitioner's travel document is valid through October 1, 2026.

Based on this travel document, the undersigned finds Petitioner's claim that his detention violates Zadvydas to be without merit and will therefore recommend denying the petition as to this claim. However, the undersigned finds that Petitioner was deprived of this liberty without due process when detained without compliance with § 241.13.  Accordingly, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus because Petitioner's detention violates due process and that Petitioner be immediately released from Respondents' custody under reasonable conditions pursuant to § 1231(a)(3).

### A.    Likelihood of Removal

When the Government wants to remove a noncitizen,[1] the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a).  After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days . . . ." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as relevant here, on the "date the order of removal becomes administratively final." Id. § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the removal period. § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE

---

[1] The court prefers the term "noncitizen" to "alien." Because the regulatory language at issue frequently uses the term "alien," the court will use the terms interchangeably in this order.

"may" continue to detain the noncitizen after the removal period if he falls into certain categories, including that he entered "the United States without being admitted or paroled," or arrived "in the United States at any time or place other than as designated by the Attorney General."  §§ 1231(a)(6), 1182(a)(6)(A)(i). Although there is no explicit statutory limit to the period for which a noncitizen may be detained following the removal period, in Zadvydas the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

> Id. at 701.

Here, Respondents filed an Albanian travel document issued for Petitioner on April 1, 2026, valid through October 1, 2026. See ECF No. 19. Though Petitioner initially established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the undersigned finds that Respondents provided sufficient evidence to rebut Petitioner's showing. The undersigned will therefore recommend that Petitioner's Zadvydas claim be denied.

### B.    Procedural Due Process

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These

4

due process rights extend to immigration proceedings. Id. at 693–94. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

### 1.    Liberty Interest

As for the first step, the Court finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).

Here, Petitioner has been living in the United States, outside of immigration detention for over twenty years, since he was ten years old. The Court therefore finds Petitioner has a substantial interest in his continued freedom protected by the Fifth Amendment. Petitioner's interest in his continued freedom is not impacted by the fact that he is subject to a final order of removal because "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez, 872 F.3d at 981. Thus, even if ICE had discretion to arrest and detain Petitioner pursuant to order of removal which became final in 2006, its exercise of that discretion must comport with due process. See Garcia v. Andrews, No. 1:25-CV-01006 JLT SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025) (finding statutory authority to revoke bond or parole "does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

///

///

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes revocation of a noncitizen's release for violating conditions of release or purposes of removal.

Respondents argue that Petitioner's detention is governed by § 1231(a)(6), which provides ICE the "discretion to continue detaining aliens pending their removal." See ECF No. 14, pgs. 2-3. The undersigned finds Respondents argument unpersuasive. § 1231(a)(6) allows for the continued detention, not re-detention, of certain noncitizens after the 90-day removal period, it is not "a free-roaming right to arrest and detain people any time [ICE] sees fit[.]" Diallo v. Joyce, No. 25-CV-9909 (AS), 2025 U.S. Dist. LEXIS 265532, 2025 WL 3718477, at *2 (S.D.N.Y. Dec. 23, 2025) (citing Zadvydas, 533 U.S. at 683 ("After entry of a final removal order and during the 90-day removal period, however, [noncitizens] must be held in custody. § 1231(a)(2). Subsequently, as the post-removal-period statute provides, the Government 'may' continue to detain a[ ] [noncitizen] who still remains here or release that [noncitizen] under supervision. § 1231(a)(6)."). That § 1231(a)(6) applies to continued detention and not re-detention is clear by the terms of its own text, wider statutory scheme, and relevant regulations. Id. (finding the "and, if released" language of § 1231(a)(6) reflects that the statute applies to individuals already in detention, the Government's reading would override § 1231(a)(3), and the regulations that operationalize § 1231(a)(6) refer to "continued detention").

Instead, because Petitioner's final order of removal "became final long ago," the 90-day removal period has expired and Petitioner is subject to supervision under § 1231(a)(3), not detention. Alva v. Kaiser, No. 25-CV-06676-RFL, 2025 U.S. Dist. LEXIS 163060, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."); see also Diaz v. Wofford, No. 1:25-CV-01079 JLT EPG, 2025 U.S. Dist. LEXIS 173666, 2025 WL 2581575, at

6

*4 (E.D. Cal. Sept. 5, 2025) (finding that where a noncitizen's removal order "became final long ago . . . he is no longer even arguably subject to mandatory detention under § 1231(a)," but is instead subject to supervision under § 1231(a)(3)). Indeed, the assigned Distrct Judge has previously ordered immediate release of immigration detainees subject to orders of removal which became final years before. See Vardan K. v. Warden of the Cal. City Det. Ctr., No. 1:26-cv-01128-TLN-CSK, 2026 LX 182878, at *6-7 (E.D. Cal. Mar. 13, 2026); Vijil Acosta v. Warden of the Golden State Annex Det. Facility, No. 1:26-cv-00530-TLN-EFB, 2026 LX 32697, at *8-9 (E.D. Cal. Feb. 7, 2026); Yunhe B. v. Warden of the Cal. City Corr. Ctr., No. 1:26-cv-03307-TLN-CKD, 2026 LX 327914, at *5-8 (E.D. Cal. June 15, 2026). Given this, the undersigned finds Petitioner has established his liberty interest in his continued release.

                    2.    Process Due

         Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

         First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for over twenty years. Despite that, Petitioner has now been detained for over six months without any evidence of being afforded a bond hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

/ / /

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

Based on the finding that, following the conclusion of the removal period, Petitioner was subject to § 1231(a)(3)), the undersigned finds that the revocation of his release is governed by 8 C.F.R. § 241.13. Diaz, 2025 WL 2581575, at *4. These regulations allow ICE to re-detain a noncitizen "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation, the noncitizen must "be notified of the reasons for the revocation of his or her release," and given "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). Neither process was followed here. Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("It is well-established that government agencies are required to follow their own regulations.") (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010)).

Respondents argue they were not required to follow the regulations prescribed by § 241.13 when detaining Petitioner because there is "no record of Petitioner ever being subject to an order of supervision—or even having been detained prior to the most recent immigration detention." See ECF No. 22, pg. 1. Petitioner's order of removal became final in 2006, ECF No. 14, pg. 1, and it appears Respondents failed or declined to follow the requirements of § 1231(a)(3), which mandates that when a noncitizen with a final order of removal is not removed within the removal period, they "be subject to supervision under regulations prescribed by the

8

Attorney General." § 1231(a)(3). The undersigned is unpersuaded that because Respondents did not impose conditions of supervision on Petitioner as required by the statute, Respondents are able to detain Petitioner without providing Petitioner any process. Allowing Respondents to circumvent the process prescribed in § 241.13 because they failed to adhere to § 1231(a)(3) undermines the purpose and efficacy of the procedural protections provided by§ 241.13. Further, as another court within the Ninth Circuit found, the language in the statute indicates that "the default status after the 90-day removal period is therefore release on conditions, not detention." Alva, 2025 WL 2419262, at *3. Thus, the undersigned finds that, following the conclusion of the removal period, Petitioner was out of detention pursuant to § 1231(a)(3) and therefore, detaining Petitioner required compliance with § 241.13.

The record does not show Petitioner was provided notification of the basis for revoking his release or an opportunity for Petitioner to present evidence and explain why revocation is not warranted. Thus, the undersigned finds that Respondents failed to comply with the requirements of § 241.13(i) when revoking Petitioner's conditional release. Even if Petitioner's assault conviction provided a valid reason to revoke Petitioner's release pursuant to § 241.13(i)(1), or if the government thought Petitioner's there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future, Respondents were required to adhere to the process § 241.13(i) and they did not here. Indeed, Respondents never explain why Petitioner was detained and instead argue Petitioner was not entitled to the procedural protections of § 241.13(i). Further, Petitioner was detained November 15, 2025, and his travel document was not issued until January 10, 2026. As such, at the time he was detained on November 15, 2025, there was not a significant likelihood that Petitioner may be removed.  Given Petitioner was not provided any protections and because he was denied procedural safeguards to ensure his detention was justified, there is a serious risk of his liberty being erroneously deprived. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

/ / /

/ / /

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). This Court finds the government has an interest in enforcing immigration laws but Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant compliance with § 241.13(i), as previously discussed.

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to the procedural protections of § 241.13(i) and Petitioner was not provided such process. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases).

Thus, the undersigned finds Petitioner is entitled to relief as to Petitioner's due process claims and will recommend granting Petitioner's petition for writ of habeas corpus, Petitioner be immediately released, and Respondents be enjoined and restrained from re-arresting or re-detaining Petitioner absent compliance with 8 C.F.R. § 241.13(i).

/ / /

/ / /

/ / /

/ / /

/ / /

10

## III. CONCLUSION

Based on the foregoing, the undersigned orders and recommends:

1.    The undersigned's prior findings and recommendations, ECF No. 21, are VACATED;

2.    It is RECOMMENDED that the amended petition for writ of habeas corpus, ECF No. 11, be GRANTED IN PART;

3.    Specifically, it is RECOMMENDED that the petition for writ of habeas corpus, ECF No. 1, be GRANTED as to Petitioner's claim his detention violated his procedural due process rights and DENIED as to Petitioner's claims that his continued detention is unlawfully prolonged under Zadvydas;

4.    It is RECOMMENDED that Respondents be ORDERED to immediately release Petitioner, ADUSH NICHOLAS MUCAJ, A-095-903-971, with all Petitioner's documents and possessions, on reasonable conditions of supervision in accordance with § 1231(a)(3);

5.    It is RECOMMENDED that Respondents be ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i);

6.    It is RECOMMENDED that Respondents be ORDERED to file a notice of compliance within three (3) days of the District Judge's order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam)

///

///

///

11

(stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 25, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE